UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID OWENS,

                           Plaintiff,

                                                                                  DECISION AND ORDER

                                                                                  11-CV-6589L

                        v.

ROCHESTER CITY SCHOOL DISTRICT,

                                                     Defendant.
_____

Plaintiff David Owens ("Owens"), an employee of the Rochester City School District (the "District"), brings this action against the District alleging that it subjected him to discriminatory failure to promote in violation of his constitutional right to equal protection, pursuant to 42 U.S.C. §§ 1981 and 1983, and that the District maintained a pattern or practice whereby his constitutional rights were violated.

Discovery is now complete, and the District moves for summary judgment dismissing Owens' claims. (Dkt. #16). For the reasons that follow, that motion is granted, and the complaint is dismissed.

**FACTUAL AND PROCEDURAL BACKGROUND**

The undisputed facts are these. Plaintiff, an African-American, was hired by the District in 1996 as a cleaner. He was later promoted to Assistant Custodian and, in 2004, Custodian Engineer, assigned to School 28. In or about September 2010, Owens applied for a position as Custodian Engineer at Edison Technical and Occupational Center ("Edison Tech."), a substantially larger

school which offered a higher rate of pay than School 28.  (On this basis, although the job title at Edison Tech. was the same, plaintiff considered the Edison Tech. position to be a promotion.)

The District's Human Capital Initiatives Department determined that five candidates met the minimum qualifications for the open Custodian Engineer position.  Those candidates, consisting of four African-Americans, including Owens, and one Caucasian, were then interviewed by Matthew Laniak ("Laniak"), Principal of Skilled Trades at Edison Tech.  Laniak testified that in addition to interviews, he also reviewed the personnel files for each candidate, with a view toward selecting a candidate who had no prior attendance problems or disciplinary issues.  It is undisputed that Owens' personnel file contained four prior notations/evaluations relating to attendance, including: (1) documentation concerning a March 2002 oral warning regarding an absence without proper notification; (2) an October 28, 2003 letter reminding Owens about the District's policy for absences due to illness; (3) a 2003-2004 evaluation recommending that Owens "continue working towards an improvement in his attendance"; and (4) a 2007-2008 evaluation noting that Owens' attendance "has improved this year." (Dkt. #28 at ¶¶19-22).  Laniak testified, and Owens does not dispute, that his personnel file also referred to a disciplinary issue.  (Dkt. #28 at ¶7).  Ultimately, Laniak rejected all of the initial five candidates, and continued to seek applicants.  The position was eventually offered to Peter Torchia ("Torchia"), a Caucasian.

Upon hearing that Torchia had been offered the position, Owens contacted Larry Profetta, the vice president of his union, and stated that he wished to file a grievance because he believed that Torchia's appointment violated the Civil Service Law with regard to, among other things, seniority. The union refused, on the grounds that there did not appear to be any Civil Service Law violation since seniority was not a determinative factor for competitive positions such as Custodian Engineer.

This action followed.

**DISCUSSION**

**I. Summary Judgment in Discrimination Cases**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989). Direct evidence of an employer's discriminatory intent is rarely available, and plaintiffs in discrimination suits must often rely instead upon the cumulative weight of circumstantial evidence. *See, e.g., Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). *See also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) ("[A]n employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employees personnel file"). Nonetheless, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

While granting Owens the liberal interpretation and favorable inferences due to him as a nonmovant, I find that he has failed to rebut the District's legitimate, nondiscriminatory reason for selecting a different candidate.

**II.     Plaintiff's Section 1981 and Section 1983 Equal Protection Claims**

The Fourteenth Amendment right to equal protection is "a right to be free from invidious discrimination in statutory and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322 (1980). Owens' claims of violation of his right to equal protection (via employment discrimination) pursuant to Section 1981 and Section 1983 are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kantrowitz v. Uniondale Union Free Sch.*, 822 F. Supp. 2d 196, 215 n.13 (E.D.N.Y. 2011) (collecting cases and noting that "employment discrimination claims brought pursuant to Sections 1981 and 1983 are analyzed under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas*"). First, Owens must establish a *prima facie* case of discrimination by demonstrating: (1) he is a member of a protected class; (2) he applied for and was qualified for the position he sought; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having plaintiff's qualifications. *See McDonnell Douglas Corp.*, 411 U.S. 792; *Petrosino v. Bell Atlantic*, 385 F.3d 210, 226 (2d Cir. 2004). "In all cases, for the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff was rejected under circumstances which give rise to an inference of unlawful discrimination." *Aulicino v. N.Y.C. Dept. Of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (internal quotation marks omitted).

Once a *prima facie* case has been established, the burden shifts to the District to articulate a legitimate, nondiscriminatory reason why Owens was not hired. If a legitimate, nondiscriminatory reason is established, the burden returns to Owens, to demonstrate that the reason put forth by the District is pretextual. *See Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 387-388 (2d Cir. 2000). *See generally St. Mary's Honor Center*, 509 U.S. 502, 508 (1993).

Owens offers no direct evidence that the District acted with discriminatory animus in selecting Torchia for the position. However, Owens argues that a reasonable trier of fact could find the District's proffered explanation for selecting Torchia to be pretextual: plaintiff avers that

although the District claims that plaintiff was rejected due to past "attendance issues," the only such issues had occurred approximately eight years prior, and Laniak gave plaintiff no opportunity to explain the reasons for the references to attendance in his personnel file. (Dkt. #29 at ¶¶6-7). Furthermore, plaintiff contends that he was better qualified for the position than Torchia: while plaintiff had been satisfactorily performing the Custodian Engineer position in School 28 for some seven years at the time of his application for the Custodian Engineer position at Edison Tech., Torchia had no prior experience as a Custodian Engineer.

Where, as here, "a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). Indeed, in order to avoid summary judgment, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id*.

Here, assuming *arguendo* that plaintiff has established a prima facie case under Section 1981 and/or 1983 for failure to hire or promote, the District has articulated a legitimate, non-discriminatory reason for deciding to offer Torchia, and not plaintiff, the position in question: the combination of plaintiff's past attendance and/or disciplinary issues (which Torchia did not have), as well as Torchia's mechanical expertise and prior experience as a maintenance mechanic in the District's "Facilities" department, which made him familiar with the means of fixing and maintaining the Edison Tech. building and the tools and systems that were situated, uniquely, on its campus. *See* Exh. C at 53-54 (Laniak's testimony: "Edison was – it's a vocational, technical building. So it was pretty complex in terms of the heating, air-conditioning, ventilation. The pneumatics, the air handling systems, to drive all the air power tools, all those things . . . [Torchia] was the person that's – downtown would dispatch to our building whenever we had a problem. He

was simply – I mean, he was and he still is the most qualified in the district to run that building.") *See also* Dkt. #16-3, Exh. A at 29.

Construing all evidence in plaintiff's favor, no reasonable trier of fact could conclude that plaintiff's credentials were "so superior to [Torchia's] that no reasonable person, in the exercise of impartial judgment, could have chosen [Torchia] over the plaintiff for the job in question." *Id*. Although it is undisputed that plaintiff (as well as all of the other initial candidates who were rejected, not all of whom were African-American) had prior employment experience in the District as a Custodian Engineer and that Torchia did not, there is no evidence that prior experience as a Custodian Engineer was a prerequisite for the position, or comprised a superior qualification for it than, for example, prior experience with the systems and machinery inside the Edison Tech. building itself. It is undisputed that plaintiff, unlike Torchia, did not have prior experience repairing and maintaining the systems, tools and equipment unique to Edison Tech. In fact, due to unique circumstances at the Edison Tech facility, it appears that Torchia's qualifications were far superior to plaintiff's.

Although plaintiff points out, correctly, that the "attendance problems" reflected in his personnel records – and cited by Laniak as one of the reasons he was rejected for the position – were minor and distant in time, plaintiff does not dispute that his personnel file did reflect prior attendance and/or disciplinary problems, and makes no claim that relevant portions of his work history were ignored or misconstrued by Laniak.

Given the lack of either direct or circumstantial evidence that the District's proffered reason for selecting Torchia instead of plaintiff was pretextual and/or that Torchia's appointment was motivated by discriminatory animus, plaintiff cannot rebut the District's legitimate, nondiscriminatory reason for selecting Torchia for the Custodian Engineer position at Edison Tech., and plaintiff's equal protection claims must be dismissed. *See Harding v. Wachovia Capital Markets, LLC*, 2013 U.S. App. LEXIS 18319 (2d Cir. 2013) (affirming dismissal of plaintiff's Section 1981 race discrimination claims where plaintiff failed to carry his burden to demonstrate that defendant's nondiscriminatory reason for failure to hire – its preference for candidates with a particular knowledge base and/or skill set – was pretextual) (unpublished opinion).

### III.    Plaintiff's *Monell* Claim

To hold a municipality liable for unconstitutional acts of its employees under *Monell v. Department of Social Services*, a plaintiff must allege that the unconstitutional action resulted from an official custom or policy of the municipality, made by its lawmakers or by those whose acts and edicts "may fairly be said to represent official policy." *Zembiec v. County of Monroe*, 766 F. Supp. 2d 484, 492-496 (W.D.N.Y. 2011), *aff'd*, 468 Fed. Appx. 39 (2d Cir. 2012), *citing Monell*, 436 U.S. 658 (1978).

Here, Owens generally claims that the District maintained a custom, policy, pattern and practice of indifference to race-based discrimination.

Having determined that plaintiff has failed to raise a triable question of fact concerning whether he was subjected to a constitutional violation that might trigger municipal liability, the Court is constrained to conclude that plaintiff has failed to state a *Monell* claim.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("[b]ecause the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct"); *Williams v. City of New York*, 2012 U.S. Dist. LEXIS 112482 at *34 (S.D.N.Y. 2012) ("[i]f a plaintiff alleges no constitutional violation, or a district court finds that the plaintiff has inadequately alleged one, the Monell claim fails").

### CONCLUSION

For the foregoing reasons, the District's motion for summary judgment (Dkt. #16) is granted in its entirety, and the complaint is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 25, 2014.